1  **THE SPENCER LAW FIRM**
   Jeffrey Spencer , Esq., (State Bar No. 182440)
2  903 Calle Amanecer, Suite 220
3  San Clemente, CA  92673
   Telephone No: (949) 240-8595
4  Facsimile No:  (949) 240-8515
5  jps@spencerlaw.net

6  LAKESHORE LAW CENTER
7  Jeffrey Wilens, Esq. (State Bar No. 120371)
   18340 Yorba Linda Blvd., Suite 107-610
8  Yorba Linda, CA  92886
9  Telephone No:  (714) 854-7205
   Facsimile No:   (714) 854-7206
10 jeff@lakeshorelaw.org

11
   Attorneys for Plaintiff
12

13              UNITED STATES DISTRICT COURT

14      CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISON

15

16 KIRK HINSHAW individually, and on   ) **Case No SACV14-00876-DOC (ANx)**
   behalf of all persons similarly situated,  )
17                                      ) **CLASS ACTION**
                                        )
18            Plaintiffs,               )
                                        ) **NOTICE OF MOTION AND**
19    vs.                               ) **MOTION FOR PRELIMINARY**
                                        ) **APPROVAL OF CLASS ACTION**
20 VIZIO INC. and DOES 1 THROUGH        ) **SETTLEMENT; POINTS AND**
21 100, INCLUSIVE,                      ) **AUTHORITIES AND**
                                        ) **DECLARATIONS IN SUPPORT**
22            Defendants.               ) **THEREOF**
                                        )
23                                      )
                                        ) Date: June 6, 2016
24 _____      ) Time: 8:30 a.m.
25                                      ) Dept**.** Court Room 9D
                                        ) Hon. David O. Carter
26

27      TO EACH PARTY AND THEIR ATTORNEY OF RECORD:

28

                            -1-

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLEASE TAKE NOTICE that on the 6th day of June 2016, at the hour of 8:30 a.m. or as soon thereafter as counsel may be heard in Department 9D of the United States District Court, Central District of California, 411 West Fourth Street, Santa Ana, California, Plaintiff Kirk Hinshaw will move for an order granting preliminary approval of a class action settlement.

Local Rule 7-3 should not apply as this motion has been filed pursuant to the Stipulation of Settlement however counsel have met and conferred on several occasions concerning this settlement more than seven days prior to the filing of this motion.

This application is made pursuant to the terms of the Settlement Agreement dated as of May 6, 2016 (the "Agreement") entered into by and among the following Parties (the "Parties"): (i) Plaintiff Kirk Hinshaw (the "Representative Plaintiff" or "Plaintiff"), on behalf of himself and each of the Settlement Class Members (collectively "Class Members"), on the one hand; and (ii) Defendant VIZIO, Inc. ("Defendant") on the other hand.

This Application is made on the grounds set forth in the accompanying materials.  This Application will be based upon this notice, the points and authorities set forth below, the attached declarations, and the complete files and records in this action.  A proposed order preliminarily approving the settlement is attached as Exhibit 5 to the Settlement Agreement.

Defendants do not oppose this motion.

-2-

1

2

3     DATED: May 9, 2016

4

5

6                              Respectfully submitted,

7

8

9                         By

10                              JEFFREY SPENCER
                                Attorney for Plaintiff
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT—
CV14-876-DOC**

# **TABLE OF CONTENTS**

I.   INTRODUCTION ..............................................................................1

II. SUMMARY OF THE LITIGATION ...................................................2

    A.  Claims and Defenses ...................................................................2

    B.  Settlement Negotiations..............................................................5

III. TERMS AND CONDITIONS OF THE SETTLEMENT ...................6

IV. THE SETTLEMENT MEETS THE REQUIREMENTS FOR
    PRELIMINARY APPROVAL  .........................................................9

    A. The Settlement Resulted from Arm's-Length Negotiations ...................12

    B. The Settlement Has No Obvious Deficiencies .........................................16

V.  NATURE AND METHOD OF CLASS NOTICE...........................17

VI. CLAIMS ADMINISTRATION .......................................................18

VII. ATTORNEYS' FEES AND COSTS AND ENHANCEMENT
    AWARD FOR THE LEAD PLAINTIFF........................................18

VIII. THE PROPOSED SETTLEMENT CLASS SHOULD BE
    PRELIMINARILY CERTIFIED......................................................19

    A. THE PROPOSED SETTLEMENT SATISFIES THE
    REQUIREMENTS FOR CERTIFICATION OF A CLASS
    UNDER RULE 23 .........................................................................20

    1. THE RULE 23(A) REQUIREMENTS ARE MET...............................20

      a.  The Class is Numerous and Ascertainable .......................................20

      b.  Common Factual and Legal Issues Exist .........................................21

      c.  Plaintiff's Claims are Typical of the Class.......................................22

      d.  Plaintiff and Counsel are Adequate Class Representatives..............22

    2. THE RULE 23(B) REQUIREMENTS ARE MET ...............................23

-1-

a. Common Factual and Legal Issues Predominate..............................23

b. The Class Action Device is Superior to Other Available
Methods of Adjudication.......................................................24

c. No manageability Issues Preclude Certification.....................................25

IX.    CONCLUSION.....................................................................................**25**

## **TABLE OF AUTHORITIES**

### **CASES**

Advertising Specialty Nat'l Asso. v. Federal Trade Com.,
238 F.2d 108 (1st Cir. 1956)……………………………………………..20

Akaosugi v. Benihana Nat. Corp. (N.D. Cal. 2012) 282 F.R.D. 241…………........21

Amchem Prods. v. Windsor (1997) 521 U.S. 591…………………………………23

Boyd v. Bechtel Corp., 485 F. Supp. 610, 622 (N.D. Cal. 1979)…………….…….15

Class Plaintiffs v. Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)……………....….10

Deitz v. Comcast Corp. (N.D. Cal. July 11, 2007)
2007 U.S. Dist. LEXIS 53188, *18 2007 WL 2015440………………………..…..23

Gatreaux v. Pierce, 690 F.2d 616, (7th Cir. 1982)…………………………………10

Hanlon v. Chrysler Corp., 150 F.3d 1011, (9th Cir. 1998)………..…9,11,12,21,23,24

In re Heritage Bond Litigation, 2005 WL 1594403, LEXIS 13555
 (C.D. Cal. June 10, 2005)…………………………………………………………10

In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions
 Act (FACTA) Litig. (C.D.Cal. 2014) 295 F.R.D.438……………………………..19

Joel A. v. Giuliani, 218 F.3d 132, (2d Cir. 2000)………..………………………....9

Kirkorian v. Borelli, 695 F. Supp. 446,  (N.D. Cal. 1988)…..……………….…..15

Lazarin v. Pro Unlimited, Inc., 2013 WL 3541217, *5, LEXIS 97213
 (N.D. Cal. 2013)…………………………………………………………………...25

Lerwill v. Inflight Motion Picture, Inc. (9th Cir. 1978) 582 F.2d 507…………..…22

Linney v. Cellular Alaska P'ship, 151 F.3d 1234, (9th Cir. 1998)………..……..…16

Nat'l Rural Telecommunication Cooperative v. Directv, Inc.,
221 F.R.D. 523, (C.D. Cal. 2004)…………….……………………………………….11

Officers for Justice v.Civil Service Com'n of City and County
 of San Francisco, 688 F.2d 615, (C.D. Cal. 1982)………...…………….…...10,11,16

Rodriguez v. Hayes, 591 F.3d 1105,  (9th Cir. Cal. 2010)……….…………..…..22

Rodriguez v. West Publishing Corp., 563 F.3d 948 (9th Cir. 2009)……………….12

Rosario v. Livaditis (7th Cir. 1992) 963 F.2d 1013………………………….…..21

Staton v. Boeing Co., 327 F.3d 938,  (9th Cir. 2003)……...………………………18

Wal-Mart, Inc.  Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, (2d Cir. 2005)…….15

Williams v. Vukovich, 720 F.2d 909, ….…… (6th Cir. 1983)…………….....…12,21

Wolph v. Acer Am. Corp., supra, 272 F.R.D. at p. 477………………………..…24

**STATUTES**

California Consumer Legal Remedies Act Cal. Civil Code §1770(a)……………….5

Fed.R.Civ.P. Rule 23………………………………………………………………*passim*

**PUBLICATIONS**

-3-

Manual of Complex Litigation, Fourth, § 21,632 (2004)……………………10,11,12

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT—
CV14-876-DOC**

## POINTS AND AUTHORITIES

## I.    INTRODUCTION

After over two years of thorough litigation Plaintiff Kirk Hinshaw ("Plaintiff") and Defendant Vizo Inc. ("Defendant") reached a proposed settlement after multiple mediation sessions and months of additional negotiation.   It is submitted that the proposed settlement is fair, reasonable and the product of serious, informed and non-collusive negotiations.   Under the settlement the asserted claims of the class members for violations of the California Consumer Legal Remedies Act and Unfair Competition Law will be settled for a settlement amount of $2,346.340 including monetary and non-monetary compensation. The settlement is non-reversionary.

Prior to reaching the settlement Plaintiff propounded written discovery, analyzed hundreds of thousands of pages of Defendant's business records, engaged in informal discovery and took the deposition of Defendant's 30(b)(6) corporate representative.

Plaintiff now moves for an Order: (1) Preliminary approving of the accompanying Settlement Agreement; (2) Conditionally certifying a Settlement Class; (3) Granting approval of the contents and form of the notice of entry of proposed class action settlement (the "Class Notice"); (4) Granting approval of the contents and form of the Claim Form; and (5) scheduling of a final settlement approval hearing, as well as the deadline for opting out or submitting any objections

-1-

to the settlement.  For the Court's review and preliminary approval, the Settlement Agreement is concurrently submitted along with a proposed Preliminary Approval Order (Exhibit 5 to Agreement) and proposed Class Notices and Claim Form (Exhibits 1-4 to Settlement Agreement).

The proposed settlement before this Court is a full and complete settlement. Defendants have already ceased the challenged business practice, will provide free $4.99 credit for digital content in the form of movies and TV shows from Amazon with a value of $1,826,340 and will pay a monetary component for attorney's fees, settlement administration costs and a class representative incentive award subject to court approval up to $520,00.  The total value of the settlement is $2,346,340 with no reversion.

Certification of the Settlement Class for settlement purposes only is an acceptable manner of implementing settlements in cases brought as class actions. As the Settlement Agreement is the product of serious, informed and arms-length negotiations and contains no deficiencies, it is worthy of preliminary approval by this Court under applicable federal law.  Accordingly, preliminary approval of the settlement at this time is appropriate.

## II.   SUMMARY OF THE LITIGATION

### A.   Claims and Defenses

On April 28, 2014, plaintiff Kirk Hinshaw filed a complaint against VIZIO, Inc. in the Superior Court of California, County of Orange, 30-2014-00719115-CU-

BT-CXC.  On May 29, 2014, Plaintiff filed a first amended complaint.  On June 6, 2014, VIZIO removed the litigation to the United States District Court for the Central District of California, Case No. 8:14-cv-00876-DOC-AN.

The First Amended Complaint asserts claims under California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200 et seq.) and Consumer Legal Remedies Act (Cal. Civ. Code § 1750 et seq.).

Plaintiff contends that VIZIO, Inc. marketed and sold its model year 2014 smart televisions as being able to access streaming video content via the Amazon App. on the televisions when VIZIO, Inc. knew that as of January 1, 2014 it was not possible to access the content via the App.

The Amazon Instant Video service is open to the general public and simply requires the consumer to open a free account with Amazon. It allows anyone with a free account to rent or purchase movies and television shows. This content should have be accessible via the televisions' Amazon App. There are also free movies and television shows available to members of the paid Amazon Prime service which should also have been accessible via the televisions' Amazon App.

Plaintiff purchased a model year 2014 Vizio smart television in April of 2014. One of the reasons he chose that model was that it was advertised as including an application for watching Amazon Instant Video. Specifically, the advertising on the box stated that the Amazon Instant Video App (which would enable the television to stream movies and television shows from Amazon's instant video service) was

included.   However, when Mr. Hinshaw attempted to access the service via the Amazon App. the television displayed a message stating the Amazon Instant Video application was currently unavailable. He tried to use the Amazon Application on the television numerous other times hoping it would work, but continued to receive the message stating the application was not currently available. (Hinshaw Declaration ¶¶3 and 4)

Discovery has confirmed that due to problems with the App. the televisions could not access the Amazon service after January 1, 2014 and that when VIZIO sold the televisions it knew they could not access the Amazon service via the App. (Spencer Declaration ¶5).   Rather than including a notification in the product description or affixing a "coming soon" sticker to the box to notify consumers the service was not yet available on the televisions, VIZIO actively marketed and sold the televisions with the misrepresentations regarding their functionality. This allowed VIZIO to maintain its market share even though its televisions lacked the ability to access one of the major video streaming services, a deficiency its competitors did not have.

VIZIO attests the access problems with the Amazon App. were fixed on all of the affected televisions by June 27, 2014 through a series of software fixes sent to the televisions via the internet and all of them could access the Amazon streaming video content via the televisions Amazon App. from that date forward. This was confirmed by the deposition testimony of VIZIO's 30(b)(6) representative. (Spencer

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT—
CV14-876-DOC**

Declaration ¶5).

The operative Complaint alleges the above described conduct by VIZIO violated the California Consumer Legal Remedies Act Cal. Civil Code §1770(a)(5) which prohibits representations that goods have characteristics and uses which they do not have and section (a)(9) by advertising goods or services with intent not to sell them as advertised and that the conduct also violated California Business and Professions Code §17200 which prohibits any "unlawful, unfair or fraudulent business act or practice," and "unfair, deceptive, untrue or misleading advertising."

Defendant denies that it engaged in any unlawful activity, failed to comply with the law in any respect, or has any liability to anyone under the claims asserted in the litigation.  Without addressing all of Defendant's contentions in this Motion, Plaintiff is assured Defendant would have vigorously opposed class certification and challenges the case on the merits, as it indicates in the Joint Rule 26(f) Report. (Doc. 21) Without admitting, and in fact denying, any wrongdoing or liability whatsoever, Defendant is nevertheless willing to agree to the terms of the Settlement as set forth in the Stipulation of Settlement in order to avoid the burden, expense, and uncertainty of continuing litigation and to fully resolve all issues relating to the subject matter of the action.

**B.    Settlement Negotiations**

The Parties attended a mediation on February 25, 2015 before Honorable Edward J. Wallin (Ret.).  The discussions were productive, but the parties did not

reach a settlement. Thereafter Plaintiff's counsel continued their analysis of the voluminous documents Defendant produced in discovery and continued their research and investigation and informal discussions with the Defendant. The parties participated in a second mediation session with Justice Wallin on June 29, 2015. At that time, the parties agreed to the general framework of the settlement. However, the parties were still far apart regarding specific details of the settlement. The settlement was only reached after an additional ten months of negotiation and the deposition of Defendant's 30(b)(6) representative. (Spencer Declaration ¶7)

## III.   TERMS AND CONDITIONS OF THE SETTLEMENT

The terms of the Settlement are set forth in the Settlement Agreement which is filed concurrently herewith and incorporated herein by reference and includes the following principal terms:

### Settlement Class, Consideration and Notice

This settlement seeks to certify a class of:

> All persons residing in the United States who purchased a VIZIO television between January 1, 2014 and June 23, 2014 and were unable to access streaming content from Amazon Instant Video after connecting the television to the internet.

The terms and conditions of the Settlement Agreement are summarized below.  Subject to the terms of the Settlement Agreement, and in exchange for a narrow release[1] of claims, Defendants are providing substantial compensation to

[1] Class members are only releasing claims arising from the non-functioning of the

-6-

Plaintiff and Class Members as follows:

1.      There are 366,000 class members. (Agreement 5.2)

2.      VIZIO has email addresses for 208,2060 class members amounting to approximately 57% of the class.  These addresses were obtained through the class members' registration of their televisions, typically when the televisions were initially activated.

3.      Defendants will provide a free $4.99 credit/voucher to each class member. The credit can be used to purchase any content (television shows or movies) on the Amazon Instant video service.  The value of this aspect of the settlement is 366,000 x $4.99 = $1,826,340. The credits will not expire. (Agreement 6.3.1-6.3.2) There is a wide variety of high definition movies and television episodes available for $4.99 or less, so class members will not be required to pay anything out of pocket to receive the benefits of the settlement.

4.      Each member of the class for whom VIZIO has an email address will automatically be sent the credit/voucher if the settlement is approved and will not be required to submit a claim form.

5.       Since VIZIO does not know the names and email addresses of the class members who did not register their television, those class members will be required to submit an online claim form in order to receive the free credit. The claim form is short and easy to follow. The class members will have 120 days from the date of

Amazon Instant Video App.

Preliminary Approval to submit the claim form. (Agreement Ex. 4 and 8.1-8.4)

**6.** VIZIO has also agreed to a monetary component of the settlement wherein it will pay up to $70,000 for settlement administration, will not oppose a request of up to $440,000 for attorneys' fees and costs and an incentive award of up to $10,000 for the class representative subject to Court approval. (Agreement 6.2.1 – 6.2.3) In all the monetary component of the settlement is $520,000. These amounts will not reduce the monetary amount of the credit/vouchers provided to the class members.

**7.** CPT Group will serve as the Settlement Administrator and be responsible for tasks including finalization of the class list, maintaining the settlement website, providing notice via email and publication, receiving claims, and making the payments. The costs of the Settlement Administrator shall be paid by VIZIO and shall not exceed $70,000.  (Agreement 7.4-7.8)

**8.** Class Notice will be provided by email within 20 days after Preliminary Approval to the approximately 208,620 class members for whom VIZO has email address. The form of the long form email notice is attached as Ex. 1 to the Settlement Agreement. (Agreement 7.2, 7.4-7.5 and Ex. 1)

**9.** Class Notice will also be provided to all class members via the affected Vizio Televisions. VIZIO will transmit a message directly to the Settlement Class Members via their televisions (the "TV Notice").  The TV Notice will be displayed twice, with the first phase of notices commencing within 20 days of entry of a Preliminary Approval Order, and the second phase commencing five days thereafter

-8-

and will continue to roll out for a period of time thereafter.  The TV Notice will be prominent in size, using easily legible fonts and will remain displayed for 30 seconds (the length of a typical commercial) unless the class member selects a command button to remove it. The TV Notice will inform recipients that they may be members of a Settlement Class, describe the credit provided by the settlement and the claims procedure and deadline, and direct them to the settlement website (Agreement 7.3)

**10.**	Class notice will also be provided via Publication Notice by publication in USA Today newspaper.  The Publication Notice will be published on or before the date as the Email Notice is first sent. (Agreement 7.7 and Ex. 3)

**11.**	The long form class notice, the claim form which can be submitted online, and case information will be available on the settlement web page www.viziosettlement.com starting within 15 days of Preliminary Approval and continuing through the claims period.

## IV.	THE SETTLEMENT MEETS THE REQUIREMENTS FOR PRELIMINARY APPROVAL

The district court has broad discretion to grant approval of Rule 23 class action settlements, and should do so where the proposed settlement is "fair, adequate, reasonable, and not a product of collusion." *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1026 (9th Cir. 1998); *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000). In determining whether a proposed settlement should be approved, the Ninth

Circuit has a "strong judicial policy that favors settlement, particularly where complex class action litigation is concerned." *In re Heritage Bond Litigation*, 2005 WL 1594403, LEXIS 13555 (C.D. Cal. June 10, 2005), citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Court approval involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval so that notice of the same can be disseminated, and then after notice is given to Class Members, whether final approval is warranted. *Manual of Complex Litigation*, Fourth, § 21,632 (2004). *See, Hanlon, supra*, at 1019. "The court ordinarily holds a preliminary hearing to determine whether there is a likelihood it could approve the settlement before conducting a full 'fairness hearing.'" At the preliminary approval stage, the Court need only "determine whether the proposed settlement is within the range of possible approval." *Gatreaux v. Pierce,* 690 F.2d 616, 621 n.3 (7th Cir. 1982). Ultimately, a class action should be approved if "it is fundamentally fair, adequate and reasonable." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *See also Officers for Justice v.Civil Service Com'n of City and County of San Francisco*, 688 F.2d 615, 625 (C.D. Cal. 1982) ("the court's intrusion on what is otherwise a private consensual agreement negotiated between parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT—CV14-876-DOC**

adequate to all concerned"). There is a "strong initial presumption that the compromise is fair and reasonable." *Hanlon, supra*, at 1019. Courts strongly favor settlement, particularly in complex class actions. *See, e.g., Class Plaintiffs* 955 F.2d at1276).

At this stage of preliminary approval, the Court is not expected to engage in the more rigorous analysis that is required for final approval (*see Manual for Complex Litigation*, Fourth, § 22.661 at 438 (2004)). Nonetheless, the Court's ultimate fairness determination will include balancing several factors, including some or all of the following: … the strength of plaintiff's case; the risk, expense, complexity and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the Class Members to the proposed settlement. *Officers for Justice v. Civil Service Comm. of City and County of San Francisco*, 688 F. 2d 615, 625 (9th Cir. 1982). Not all of the above factors apply to every class action settlement, and one factor alone may prove determinative in finding sufficient grounds for court approval. *Nat'l Rural Telecommunication Cooperative v. Directv, Inc.*, 221 F.R.D. 523, 525-26 (C.D. Cal. 2004). District courts have wide discretion in assessing the weight and applicability of each factor. Id. Based on the presentation set forth above, it is submitted that this Settlement not only satisfies the criteria for Preliminary Approval, but also that this

-11-

Court should be comfortable that it will in fact easily meet the criteria for Final Approval, if and when the case reaches that stage.

### A.  The Settlement Resulted from Arm's-Length Negotiations

The Ninth Circuit has long supported settlements reached through arm's length negotiation by capable opponents. In *Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009), the Ninth circuit expressly opined that courts should defer to the "private consensual decision of the [settling] parties." *Id.* at 965, citing *Hanlon, supra*, at 1027. The primary reason for deferring to such settlements is the experience of counsel and the participation of a neutral. Both factors are present here. As the Court explained, "In reality, parties, counsel, mediators, and district judges naturally arrive at a reasonable range for settlements by considering the likelihood of a plaintiffs' or defense verdict, the potential recovery, and the chances of obtaining it, discounted to present value." *Id.* at 965 (citations omitted). *See also, Williams v. Vukovich*, 720 F.2d 909, 922-923 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs"); 2 *Newberg on Class Actions* §11.24 (4th Ed. & Supp. 2002); *Manual For Complex Litigation* (Fourth) §30.42.)

Class Counsel  conducted significant investigation of the facts during the prosecution of this action, including (1) review and analysis of hundreds of thousands of critical documents, including, but not limited to the marketing and advertising of the App., customer complaints and the functionality of the App. and

efforts to make it functional, before and after the televisions were offered for sale (2) the deposition of Defendant's 30(b)(6) representative regarding the lack of functionality of the Amazon App., Defendant's knowledge and advertising and marketing of the App., the size of the class and the dates the App. became functional. (Spencer Decl. ¶7).

The Settlement is the product of extensive negotiations between the Parties conducted at arm's length and is free from collusion. The Parties on both sides are represented by experienced class action attorneys with specialized knowledge of both class action and consumer law. In order to reach the final settlement, the Parties debated, discussed, and resolved many difficult legal and factual issues. Moreover, during the process the Parties were both required to make reasonable compromises in light of the facts, issues, and risks presented in this Action. In particular, in reaching the Settlement, Class Counsel considered the uncertainty and risks of further litigation, and the difficulties inherent in such litigation. Class Counsel also considered the strengths and weaknesses of the case, and thoroughly examined all of Defendant's defenses. Class Counsel also considered the burdens of proof necessary to achieve certification of the case, and then to establish liability against Defendants and to defeat its defenses. All of these factors indicated that the best interests of the Class Members would be served by a settlement of this Action in the manner and upon the terms set forth in the Settlement Agreement and Class Counsel recommend the settlement as fair, reasonable and adequate. (Spencer Declaration ¶8)

-13-

This Settlement has a total value of $2,346,340, which sum represents a reasonable recovery for the Class Members.  The $4.99 credit for Amazon movies and content is directly related to the class members' inability to access the Amazon content via the App. for a period of time and provides fair compensation for that lack of access, which was restored by June 23, 2014 for all class members.

The settlement amount is within the range of what realistically could have been recovered at trial. People who purchased the televisions with the expectation of being able to access the Amazon Instant Video service either through free accounts or their paid Amazon Prime memberships were misled.  What a jury would award for the loss of access for the six-month class period is speculative.  The televisions had many other functions such as traditional television viewing, cable viewing, watching DVDs and using the other Apps. available on the televisions such as Netflix. Presumably the jury would weigh the value of the other uses of the televisions vis-à-vis the use of the Amazon App. for the six-month class period.

Another approach would be to look at the value of the Amazon Prime paid service which requires a $99 annual membership (or about $8.99 per month) and which confers numerous benefits including free shipping on Amazon's retail site, the ability to stream certain television shows and movies for free, free music streaming, free e-books and free cloud data storage. However, the defect in the Amazon App. only kept the class members from using the free movies/shows benefit via their VIZIO TV and not any of the other benefits of Amazon Prime.  If

-14-

the free streaming benefit is worth about $1 per month then the $5 credit is reasonable compensation for use of that benefit for several months, especially when it is remembered class members could still stream the Amazon Prime movies/shows on other devices.

In light of the foregoing, the $4.99 settlement consideration is a fair settlement amount for the contested claims which is within the range of what could realistically be recovered at trial assuming liability is established. Many high definition movies can be obtained for the $4.99 amount and the class members are not required to spend any additional money to receive the benefits of the settlement nor are they required to purchase an Amazon Prime membership to use the credit.

The Parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation. The opinion of experienced counsel, as are involved on both sides of this case, supporting the Settlement is entitled to considerable weight. "A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); *see also, Kirkorian v. Borelli*, 695 F. Supp. 446, 451 (N.D. Cal. 1988) (opinion of experienced counsel is entitled to considerable weight); *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (recommendations of plaintiffs' counsel should be given a presumption of reasonableness). Plaintiff and Class Counsel have also taken into account the

-15-

uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation. Based on the foregoing, Plaintiff and Class Counsel submit that the settlement set forth in the Settlement Agreement is fair, adequate and reasonable, and is in the best interests of Plaintiff and the Class Members. (Spencer Decl. ¶8).

### B.    The Settlement Has No Obvious Deficiencies.

The proposed Settlement has no obvious deficiencies. Under the terms of the Settlement Agreement, Defendants will provide consideration of $2,346.340 with no reversion. The Settlement Agreement provides no preferential treatment for Plaintiff or other Class Members. Plaintiff will receive a distribution from the settlement proceeds that is calculated in the same manner as the distributions to other Class Members. "Ultimately the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice, supra*, at 625. In making its determination, the Court should weigh the benefits that the settlement will realize for the class against the uncertainty of litigation and the possibility that the class members would obtain no relief in the absence of a settlement. *See, Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("...it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.")

Throughout this litigation, Plaintiff has argued that Defendant should be liable for all claims raised in the Complaint. Defendant, on the other hand, has steadfastly

-16-

maintained that its advertising and marketing of the televisions was accurate and did not violate the CLRA or constitute unfair competition.

This Settlement represents a recovery for the Class Members, and a well-crafted compromise of the divergent positions of the Parties. Further, the Settlement has been reached after considerable negotiation, involving the efforts of a highly experienced Mediator. Each side evaluated the strengths and weaknesses of their case and independently came to the conclusion that this Settlement represents a responsible means of addressing Plaintiff's claims and Defendant's defenses.

## V.    <u>NATURE AND METHOD OF CLASS NOTICE</u>

"For any class certified under Rule 23(b)(3), the court must direct that Class Members receive the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed.R.Civ.P. Rule 23(c)(2)(B). Here, the Parties have agreed upon a Notice which will be emailed to the 208,620 class members for whom VIZIO has email address. (Agreement Ex. 1). VIZIO will also provide a TV notice on the affected televisions which will be displayed for 30 seconds (the length of a typical commercial) when the television is turned on.  The notice will be provided twice, with the first notice rolling out on the same date as the email notice and the second notice rolling out five days later. (Agreement Ex. 2). It is anticipated that the notices will take a period of weeks to roll out to all of the televisions. The parties will also provide Publication Notice in the USA Today. (Agreement Ex. 3) Finally, the Notice will also be

available on the settlement webpage www.viziosettlement.com. Combined these four methods are the most efficient and effective method for notifying Class Members and meet all of the criteria set forth in Rule 23(c)(2). The full notices provide all necessary information while the short form notices clearly and concisely catch the class members' attention and direct them where to obtain the full notices. As such, the Parties request that the Notices be approved.

## VI.   CLAIMS ADMINISTRATION

The Parties have agreed to the appointment of an experienced class administration company which has acted as claims administrator in numerous other cases, CPT Group. It has provided an estimate that its expenses will not exceed $70,000 for all the work required to properly handle all the settlement administration tasks.

## VII.   ATTORNEYS' FEES AND COSTS AND ENHANCEMENT AWARD FOR THE LEAD PLAINTIFF

The Settlement Agreement contemplates that Class Counsel will apply to the Court for an award of attorneys' fees and costs not to exceed 25% of the settlement value to be paid in addition to the free credit component of the settlement. If approved, Class counsel's requested attorneys' fees and costs of $440,000 are below the 9th Circuit 25% benchmark and are only 19%.  The request for this award is set forth in the proposed Notice.

"[N]amed plaintiffs… are eligible for reasonable incentive payments." *Staton*

-18-

*v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).The criteria courts consider in determining whether to approve an incentive award include: the risk to the class representative, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation. (In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act (FACTA) Litig. (C.D.Cal. 2014) 295 F.R.D. 438, 470.) Here, the lead plaintiff was not simply a bystander in the litigation. From the time he brought this matter to counsel to present, he has been actively involved in the litigation, providing information and evidence, assisting with discovery and participating in settlement negotiations. Without his efforts on behalf of the class there would be no class recovery. (Hinshaw Dec. ¶5, Spencer Dec. ¶ 9) As a result the Settlement Agreement contemplates the class representative will apply for an incentive award in the amount of $10,000. The request for this award is set forth in the proposed Notice.

## VIII.  **THE PROPOSED SETTLEMENT CLASS SHOULD BE PRELIMINARILY CERTIFIED**

The parties seek the preliminary certification of the following class:

> All persons residing in the United States who purchased a VIZIO television between January 1, 2014 and June 23, 2014 and were unable to access streaming content from Amazon Instant Video after connecting the television to

the internet.

## A.   THE PROPOSED SETTLEMENT SATISFIES THE REQUIREMENTS FOR CERTIFICATION OF A CLASS UNDER RULE 23.

To certify a class, Plaintiff must present evidence that all of the requirements of Rule 23 (a) have been met and that the requirements of at least one of the subdivisions of Rule 23 (b) have been met.  Plaintiff seeks to certify this matter under Rule 23 (b) (3).  Under Rule 23 (a), the requirements are: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Under Rule 23 (b) (3), Plaintiff must also show that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  As discussed in detail below, all of these requirements have been met.

### 1.   THE RULE 23(A) REQUIREMENTS ARE MET

### a.   The Class Is Numerous and Ascertainable.

Rule 23(a)(1) is typically referred to as "numerosity" in that it requires a class that is "so numerous that joinder of all members is impracticable." The term "impracticable" does not mean "impossible," and only refers to "the difficulty or

1
2
3
4
5
6
7
8
9
10

inconvenience of joining all members of the class." *Advertising Specialty Nat'l Asso. v. Federal Trade Com.*, 238 F.2d 108, 119 (1st Cir. 1956).   "[N]umerosity requirement is not tied to any fixed numerical threshold, but courts generally find the numerosity requirement satisfied when a class includes at least forty members." (Akaosugi v. Benihana Nat. Corp. (N.D. Cal. 2012) 282 F.R.D. 241, 253.)   Here, there and 366,000 class members and the numerosity requirement is easily met. Additionally, Defendants have identified all of the Class Members from their business records so the class is readily identifiable and ascertainable.

11
12

      **b.**    **Common Factual And Legal Issues Exist.**

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

      A class has sufficient commonality under Rule 23(a)(2) if "there are questions of law or fact common to the class." "The fact that there is some factual variation among the class grievances will not defeat a class action.  A common nucleus of operative facts is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." (Rosario v. Livaditis (7th Cir. 1992) 963 F.2d 1013, 1017-1018.)  The common question requirement can be satisfied by a shared legal issue with divergent factual predicates or by a common core of salient facts with disparate legal remedies.  (Staton v. Boeing Co., supra, 327 F.3d at p. 953; Hanlon v. Chrysler Corp. (9th Cir. 1998) 150 F.3d 1011, 1019.)  Both shared legal issues and a common core of salient facts are present.  The shared legal issue is 1) did VIZIO's advertising and marketing of the televisions as having a functioning Amazon App for viewing streaming content violate the CLRA and violate California's Unfair Competition

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT—
CV14-876-DOC**

Law.  The common core of salient facts includes: 1) VIZIO advertised and marketed all of the televisions as having a functioning Amazon App. when it knew the App did not work; 2) Each of the class members purchased the televisions and connected them to the internet when the App. did not work and could not use the App. to access content from Amazon. The legal issues and facts are the same for all class members and there is an ample showing the commonality requirement has been met.

### c.    Plaintiff's Claims are Typical of the Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This requirement is "permissive" and requires only that the representative's claims are reasonably related to those of the absent class members. *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. Cal. 2010). Typicality is met here as the claims of the Class Members are based on the same legal and factual claims as those of the Plaintiff.

### d.    Plaintiff and Counsel are Adequate Class Representatives

The requirement of fair representation involves two factors.  "First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." (Lerwill v. Inflight Motion Picture, Inc. (9th Cir. 1978) 582 F.2d 507, 512.)  The inquiry whether the class representative will adequately represent the class focuses on two questions: 1) whether the class representative and its counsel have any conflicts of interest with

the class members, and 2) whether the class representative and its counsel will vigorously prosecute the action for the class. (Hanlon, supra, 150 F.3d at p. 1020.) Plaintiffs' counsel are well qualified based upon their academic credentials and many years of class action experience.  Numerous courts, have approved them to serve as class counsel.  (Wilens Declaration, ¶¶3-21; Spencer Declaration, ¶¶10-35). The proposed class representative has no interests antagonistic to the other class members and desires to serve their interests. The Class Representative has litigated this case in good faith and the interests of the Class Representative are aligned with those of the Class Members, as both share a common interest in challenging the legality of Defendants' practices, policies, and procedures. (Hinshaw Declaration ¶¶5-6). Moreover, there is no evidence of any collusion between the Parties.

### 2.    The Rule 23(b) Requirements are Met

### a.    Common Factual and Legal Issues Predominate.

Under Rule 23 (b) (3), a plaintiff must demonstrate that questions of law or fact common to the class members "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for the fair and efficient adjudication of the controversy."  This inquiry "trains on the legal or factual questions that qualify each class member's case as a genuine controversy, questions that preexist any settlement."  (Amchem Prods. v. Windsor (1997) 521 U.S. 591, 623.)  The district court must "identify the substantive issues raised by each cause of action and then inquire into the proof relevant to each issue."

-23-

(<u>Deitz</u> v. <u>Comcast</u> <u>Corp</u>. (N.D. Cal. July 11, 2007) 2007 U.S. Dist. LEXIS 53188, *18 2007 WL 2015440.)   However, a plaintiff need only demonstrate "there are plausible classwide methods of proof available to prove their claims.   (<u>Wolph</u> v. <u>Acer</u> <u>Am.</u> <u>Corp.</u>, <u>supra</u>, 272 F.R.D. 477 at p. 487.

As detailed above, the legal issues are common to all class members and turn on the determination of whether Defendant's marketing and advertising was deceptive and violated the CLRA and was an unfair business practice. Plaintiff can prove liability on a classwide basis with no significant individualized issues. Common evidence will show Defendants marketed and advertised and sold the televisions as having a functioning Amazon App. when Defendants knew the App. did not work. A finding that the advertising was deceptive and misleading will apply to all class members therefore, common questions predominate over individual questions.

### b.  The Class Action Device Is Superior to Other Available Methods of Adjudication

The class action device proposed herein is "superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). Provisional certification of the Class will allow Class Members' claims to be fairly, adequately, and efficiently resolved to a degree that no other mechanism or forum would provide. As in *Hanlon*, the alternative methods of resolution are individual claims for a relatively small amount of damages. *Hanlon v. Chrysler*

-24-

*Corp.*, 150 F. 3d 1011, 1019-20 (9th Cir. 1998). These claims "'would prove uneconomic for potential plaintiffs' because 'litigation costs would dwarf potential recovery.'" *Id.* at 1023.

### c.   No Manageability Issues Preclude Certification

Finally, no issues of manageability would preclude certification of the Settlement Class. A court faced with a request for a settlement-only class like this one need not inquire whether the case would present problems of trial management, even though other requirements under Rule 23 must still be satisfied. See, e.g., *Lazarin v. Pro Unlimited, Inc.*, 2013 WL 3541217, *5, LEXIS 97213 (N.D. Cal. 2013). Within the limited sphere of this settlement class certification, and as discussed above, Plaintiff believes the proposed plan of distribution and settlement process are both efficient and manageable.

## IX.   **CONCLUSION**

The Parties have negotiated a fair and reasonable settlement of a case that provides relief that likely would never have been realized but for this class action. Accordingly, Plaintiff respectfully requests the Court grant this Application for Preliminary Approval of Class Settlement and enter the order concurrently submitted.

DATED: May 9, 2016

Respectfully submitted,

1

2

By     _____

3                 JEFFREY SPENCER

4                 Attorney for Plaintiff

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT—
CV14-876-DOC**