Ekwan E. Rhow - State Bar No. 174604
  eer@birdmarella.com
David I. Hurwitz - State Bar No. 174632
  dih@birdmarella.com
BIRD, MARELLA, BOXER, WOLPERT, NESSIM,
DROOKS, LINCENBERG & RHOW, P.C.
1875 Century Park East, 23rd Floor
Los Angeles, California 90067-2561
Telephone: (310) 201-2100
Facsimile: (310) 201-2110

Attorneys for Defendant VIZIO, Inc.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| KIRK HINSHAW, individually, and on behalf of all persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>VIZIO, INC., and DOES 1 through, 100, inclusive. | CASE NO. SACV14-00876-DOC (ANx)<br><br>CLASS ACTION<br><br>**DEFENDANT VIZIO'S SUPPLEMENTAL RESPONSE TO SECOND ORDER RE: MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  May 27, 2016<br>Time:  8:30 a.m.<br>Crtrm.: 9D<br><br>Assigned to Hon. David O. Carter |

## I.    INTRODUCTION

Defendant agrees with the Court's statement that $2,346,340 is the maximum value of the settlement.  Defendant did not have the opportunity to review Plaintiff's Motion for Preliminary Approval before it was filed, and would not have described the settlement as having a total value of $2,346,340 with no reversion.  That said, defendant firmly believes that the proposed settlement is fair and reasonable and that the Court should grant preliminary approval (and ultimately final approval) of the settlement for the reasons set forth below.

/ / /

/ / /

3273145.2

**II.      Precedent Supports Approval of the Proposed Voucher Settlement.**

In response to the Court's request for authority (Order at 3, n. 1) supporting approval of the kind of settlement agreed here, defendant cites *In re Toys R Us-Delaware, Inc.—Fair and Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 457 (C.D. Cal. 2014).  The complaint in that case alleged that Toys R Us violated the FACTA by printing more than the last four digits of credit card numbers on receipts.  The parties negotiated a settlement providing that class members who submitted valid claims would receive vouchers ranging from $5 to $30, depending on the number of credit/debit purchases made during the class period.  *Id.*, 295 F.R.D. at 447.  The parties did not agree to a fixed total amount for the voucher program, and did not agree to redistribute unclaimed vouchers that would be made available to the class.

Looking at the same possible signs for collusion identified by the Ninth Circuit in *In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935, 947 (9th Cir. 2011), and identified by this Court in its Second Order, the court carefully scrutinized the settlement before it.  *Toys R Us*, 295 F.R.D. at 457.  In approving the settlement, the court noted the absence of the third *Bluetooth* factor ("when the parties arrange for fees not awarded to revert to defendants, rather than being paid into the class fund"), concluding that "the settlement agreement does not create a common fund and does not contain a reversion provision." *Id.*, at 457.

The court's reasoning in *Toys R Us* applies here.  Like the defendant in that case, VIZIO agreed to pay each class member a specified voucher amount.  But compared to the limited notice plan in *Toys R Us*, much better and effective forms of notice and distribution will be implemented here.  In *Toys R Us,* the defendant did not have address information for any of the class members, so the only practicable way to give notice was by publication (in USA Today) and on a claims website.

VIZIO, in contrast, has e-mail address information for approximately 57% of the settlement class members, and will provide vouchers directly to more than half

1  of the class members without requiring that they submit a claim.  Even where

2  VIZIO does not know the names or addresses of the persons who own the

3  televisions, it can identify the affected TVs and direct a common message to the

4  settlement class members' VIZIO televisions via the internet.  This is on top of

5  notice by publication in USA Today and the third party claims website (which is all

6  that the *Toys R Us* class members received).  Thus, class members will receive

7  better notice and are much more likely to receive a benefit than in *Toys R Us*.

8  **III.   The Proposed Settlement is Fair and Reasonable.**

9      As noted in Plaintiff's Motion, the Court need not engage at this time in the

10  more rigorous analysis required for final approval of the settlement.  (Mot. at 11.)

11  Nevertheless, since the Court has stated its inclination regarding this settlement

12  agreement, defendant wants to address two factors that it believes strongly favor

13  settlement approval here: (1) the strength (or lack thereof) of plaintiff's case; and

14  (2) the risk of obtaining and maintaining class action status throughout the trial if the

15  settlement is not approved.  *See Churchill Village, L.L.C. v. General Electric*, 361

16  F.3d 566, 575 (9th Cir. 2004) (setting forth multi-factor test for assessing fairness of

17  class action settlement).

18      **A.   The Proposed Settlement is Fair on the Facts of this Case.**

19      Plaintiff purchased a VIZIO smart TV in April 2014.  VIZIO smart TVs

20  include applications for various third party internet sites, including Netflix, Hulu,

21  Amazon, YouTube, Facebook, Twitter and others.  Hinshaw declares that he could

22  not receive streaming video from Amazon Instant Video when he attempted to

23  access it through the application on his television.  He asserts two causes of action

24  against VIZIO, one under California's Consumer Legal Remedies Act ("CLRA"),

25  Cal. Civ. Code § 1750, and the other under the Unfair Competition Law ("UCL"),

26  Cal. Bus. and Prof. Code § 17200.

27      On April 28, 2014, Hinshaw sent VIZIO a CLRA notice demanding that

28  VIZIO fix the problem he was experiencing with the Amazon Instant Video

application, both for him and for all affected consumers.  Amazon and VIZIO had been working to address the issue long before receiving Hinshaw's demand, and before the expiration of the 30 day statutory period to respond, VIZIO transmitted a software update to Hinshaw's TV to address the Amazon streaming video issue.  On May 27, 2014, VIZIO informed Hinshaw that it had transmitted a software update to his TV, had identified the other affected TVs, and would complete the transmission of the software update to the TVs within a reasonable time.  By June 23, 2014, VIZIO had done so for the affected TVs.  Thus, Hinshaw will face substantial hurdles maintaining a damages action under the CLRA given that VIZIO completed the updates within a reasonable time following the demand.  Cal. Civ. Code § 1782(b) and (c).

Hinshaw also faces severe hurdles bringing a class claim to recover monetary relief under the UCL.  The UCL provides only for equitable remedies, not damages. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003). Hinshaw is not entitled to restitution if the case were tried.  The televisions worked apart from the third party application.  The only problem Hinshaw complains of is that he could not stream video from Amazon for approximately one month.  There is no evidence that VIZIO was at fault for technical problems with Amazon's streaming video service.

Hinshaw claims that VIZIO advertised, specifically on the box, that the Amazon Instant Video App was included with his TV when, in fact, Amazon Instant Video was not available to stream.  (Hinshaw Decl. ¶¶ 3, 4.)  But VIZIO stated, on the box itself, that internet applications pictured on the box (including Amazon, Netflix and others) may not be available at the time of purchase.  Specifically, VIZIO disclosed on the box containing his television:

> VIZIO INTERNET APPS PLUS® APPLICATIONS PICTURED OR
> DESCRIBED HEREIN OR IN ITS ACCOMPANYING
> DOCUMENTATION MAY NOT BE AVAILABLE, OR MAY

1     PROVIDE DIFFERENT FUNCTIONALITY, CONTENT OR

2     SERVICES, AT THE TIME OF PURCHASE.  APPLICATIONS ARE

3     SUBJECT TO FUTURE UPDATES AND/OR MODIFICATIONS

4     WITHOUT NOTICE.

5 This disclaimer was accurate; VIZIO did not control the availability of Amazon

6 Instant Video or the other internet-based applications.

7        **B.**    **Plaintiff Would Face Substantial Hurdles Certifying and**

8               **Maintaining a Class Outside of the Settlement Context.**

9 While VIZIO believes the proposed settlement class meets the requirements

10 of Rule 23, if the proposed settlement is not approved, plaintiff faces a great risk

11 that a class would not be certified or maintained through a trial.  That is because,

12 while VIZIO can identify the approximately 366,000 TVs that received software

13 updates so that they could stream Amazon Instant Video, VIZIO cannot ascertain

14 who or how many among these consumers actually tried to access Amazon Instant

15 Video and were unable to do so.

16 VIZIO is reasonably certain that number would be substantially less than the

17 proposed settlement class of 366,000 for two reasons.  First, not all consumers who

18 purchased the affected TVs use Amazon Instant Video.  Some consumers do not use

19 any internet streaming application.  And of those who do, some use only Netflix or

20 Hulu, not Amazon.

21 Second, some consumers in the proposed settlement class would have had

22 access to Amazon streaming video the first time they tried to use it.  That is because

23 software updates were rolled out to the affected TVs beginning in April 2014, and

24 the rollouts were concluded by June 23, 2014.  Thus, for example, a settlement class

25 member may have purchased a TV in April 2014, and then first tried to use the

26 Amazon Instant Video application sometime in May after receiving a software

27 update that addressed the streaming video issue.  VIZIO cannot identify who used

28 the application, let alone when they may have first tried to use it.

The parties agreed to define the proposed settlement class in a way that resolves the ascertainability problem for settlement purposes.  All of the affected TVs that received the software update are in the proposed settlement class, regardless of whether the consumer actually tried to use the Amazon Instant Video application during the relevant period or not.

However, if there is no settlement and the case is litigated, plaintiff would face substantial difficulty hurdles in defining an ascertainable class consisting only of persons who suffered actual economic injury.  A class definition must specify  "a distinct group of plaintiffs whose members [can] be identified with particularity." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  And significantly, the class cannot be so broadly defined that it embraces "members who have suffered no injury and therefore lack standing to sue." *Bishop v. Saab Auto. A.B.*, No. CV 95-00721 JGD, 1996 WL 33150020, at *5 (C.D. Cal. Feb. 16, 1996); *see also Dioquino v. Sempris, LLC*, No. CV 11-05556 SJO, 2012 WL 6742528, at *5 (C.D. Cal. Apr. 9, 2012).

## IV.   CONCLUSION

The proposed settlement fairly balances the risk and reward that this case presents.  Given the facts and circumstances of plaintiff's case and the hurdles of certifying and maintaining a nationwide class outside of the settlement context, VIZIO respectfully requests that the Court grant preliminary approval to the proposed settlement.

DATED:  May 24, 2016                    Bird, Marella, Boxer, Wolpert, Nessim, Drooks, Lincenberg & Rhow, P.C.


By: _____/s/_____
                    David I. Hurwitz
        Attorneys for Defendant VIZIO, Inc.